**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DAVID JOSEPH TEAYS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-0088-JED-TLW** |
| | ) | |
| **TULSA COUNTY SHERIFF DEP'T;** | ) | |
| **ARMOR CORRECTIONAL HEALTH, INC.;** | ) | |
| **STANLEY GLANZ;** | ) | |
| **KATHY LOHER,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

On February 19, 2015, Plaintiff David Teays, a prisoner appearing *pro se*, filed a 42 U.S.C. § 1983 civil rights complaint (Doc. 1). By Order filed March 3, 2015 (Doc. 10), the Court dismissed Defendants Tulsa County Sheriff Department and Stanley Glanz, and dismissed Counts II and III of the complaint for failure to state a claim. On March 17, 2015, the Court dismissed Defendant Armor Correctional Health (Armor). *See* Doc. 18. On August 17, 2015, Plaintiff filed a motion to amend (Doc. 31) and provided his proposed amended complaint. On October 12, 2015, in response to Count I of the original complaint, Defendant Kathy Loher, the "health care service administrator" at the Tulsa County Jail (TCJ), filed a motion to dismiss for failure to state a claim (Doc. 37). Plaintiff filed a response in opposition to the motion to dismiss (Doc. 41), and Defendant Loher filed a reply to Plaintiff's response (Doc. 43). On November 20, 2015, Tulsa County Sheriff's Office filed a Special Report (Doc. 44).

For the reasons discussed below, Defendant Loher's motion to dismiss shall be granted and Plaintiff's motion to amend shall be denied.

### *BACKGROUND*

In Count I of his original complaint (Doc. 1), Plaintiff alleges that, while being held in the David L. Moss Criminal Justice Center, the facility serving as the TCJ, Defendant Loher and the "medical staff" at TCJ "deliberly [sic] disregaurded [sic] the recomendations [sic] of St. John's E.R. Doctor" who "instruct[ed] the Defendants to send the Plaintiff to a neurosurgeon within 5 days due to the severity of his [spinal] injury." *Id.* at 3. In Count II, Plaintiff alleged that on one occasion "a nurse employed by said Defendants provided the Plaintiff with the medication for another inmate" *Id.* at 5. In Count III, Plaintiff alleged that he was "transported to and from Tulsa Co. Court" in a non-handicap accessible van in violation of the Americans with Disabilities Act (ADA). *Id.* 4, 5. Plaintiff stated that this caused him to fall and re-injure himself. *Id.* at 4. In prior Orders (Docs. 10, 18), the Court dismissed Count II because Plaintiff's allegations did not suggest that any defendant acted with deliberate indifference, Doc. 10 at 13, and dismissed Count III because Plaintiff's allegations did not state a claim under the ADA, *id.* at 14. The Court also dismissed Defendants Glanz, Tulsa County Sheriff Department, and Armor for failure to state a claim (Docs. 10, 18).

Significantly, in both the Order filed March 3, 2015 (Doc. 10) and the Order filed March 17, 2015 (Doc. 18), the Court advised Plaintiff of the legal standards applicable to his claims. Specifically, the Court explained the "personal participation" element of a § 1983 claim, the elements of an "official capacity" claim, and the two-pronged standard applicable to an Eighth Amendment claim. *See* Doc. 10 at 9-13. In the Order filed March 17, 2015, the Court explained that a government body "cannot be held liable under § 1983 on a *respondeat superior* theory" (Doc. 18 at 3 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978))).

On August 17, 2015, after having been advised of the legal standards applicable to his claims, Plaintiff filed a motion to amend (Doc. 31) and provided his proposed amended complaint.

2

Plaintiff seeks to add as defendants: Sheriff Stanley Glanz, in his official and individual capacity; Dr. Gable, the "head physician" at TCJ, in his official capacity only; and Major Shannon Clark, the administrator at TCJ, in his official capacity only.[1] *Id.* at 1-3. In Count I of his proposed amended complaint, Plaintiff alleges that Defendants violated his "right to adequate medical care under the 8th or 14th amendment as a pretrial detainee." *Id.* at 7. Plaintiff claims that Defendants acted with "deliberate indifference to his medical needs" when they failed to "send the Plaintiff to a neurosurgeon within" five days of visiting the emergency room at St. John Medical Center, as per the emergency room doctor's instructions. *Id.* at 7-8. In Count II, Plaintiff alleges that his constitutional rights "under the 8th and 14th Amendment[s] [requiring] adequate medical care as a pretrial detainee" were violated "from 10-15-14 thru 3-26-15 [when] the Plaintiff was continusly [sic] denied prescribed medical treatment due to deliberate indifference to his medical needs." *Id.* at 8. In Count III, Plaintiff alleges that Defendants acted with "[d]eliberate indifference to [his] safety and medical needs" and violated his "right to not be subjected to cruel and unusual punishment" because he was made to bend over several times a day while in medical segregation and while being transported in a van "to the doctor's office and Tulsa County Courthouse" after being instructed by the neurosurgeon not to "stoop, bend over, lift, or exert himself in any way until further notice." *Id.* at 10-11. In his request for relief, Plaintiff seeks $9,999,000 from each defendant as well as injunctive relief against Defendant Glanz "[to] permanantly [sic] change the

---

[1]Defendant Loher is listed as a defendant in Plaintiff's proposed amended complaint, but Plaintiff does not state whether he intends to sue Defendant Loher in her official or individual capacity or both. Plaintiff's original complaint also does not clearly state whether Defendant Loher is sued in her official or individual capacity or both. Therefore, the Court "will liberally construe plaintiff's complaint" and proposed amended complaint "as asserting both types of claims." *See Strepka v. Miller*, 28 F. App'x 823, 826-27 (10th Cir. 2001) (unpublished); *see also Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991).

3

polic[ies] [and] the procedures of how inmates are restrained while injured so [that] they are not subjected to further injury or pain and suffering." *Id.* at 12.

On October 12, 2015, in response to Count I of the original complaint, Defendant Loher filed a motion to dismiss for failure to state a claim (Doc. 37), arguing that "Plaintiff has failed to allege facts sufficient to show that he suffered a constitutional deprivation" and that "Plaintiff has failed to allege facts sufficient to show that he suffered substantial harm." *Id.* at 4, 10. Defendant Loher also argues that, to the extent Plaintiff's claims against her are allowed to proceed "based on municipal liability, any claim for punitive damages against Defendant must be dismissed" because "[p]unitive damages are not available against a municipality on a claim brought under § 1983." *Id.* at 11-12 (citations omitted).

## *ANALYSIS*

### A.    Standards governing Plaintiff's claims

#### 1. Dismissal standards

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).[2] The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court must accept all the well-pleaded allegations of the complaint as true – even if doubtful in fact – and must

---

[2]*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

construe the allegations in the light most favorable to the plaintiff. *Id.* at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," a court should dismiss the cause of action. *Id.* at 558 (citations omitted).

Under this standard, the Court should liberally construe a *pro se* plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction the Court gives the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts," *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citation omitted), and a court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citation omitted). Even so, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.

### 2. Motion to amend and permissive joinder of defendants

Under Fed. R. Civ. P. 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Tenth Circuit has explained, "[a]lthough leave to amend 'shall be freely given when justice so requires,' whether leave should be granted is within the trial court's discretion." *Las*

5

*Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (citations omitted).  Courts may deny a request for leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (citation omitted).  Joinder of defendants is permitted where "any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

### 3.  Official capacity claims

Claims against a government officer in his or her official capacity are actually claims against the government entity for which the officer works.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In his complaint, Plaintiff brings claims against county employees in their official capacity, thereby implicating municipal liability.  To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker.  *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013).  "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."  *Id.* at 770.  In addition, a plaintiff must show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.  *See Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997); *see also City of Canton v.*

6

*Harris*, 489 U.S. 378, 389 (1989). Thus, three (3) elements must be satisfied for municipal liability: (1) official policy or custom, (2) causation, and (3) state of mind. *Schneider*, 717 F.3d at 767.

Under § 1983, a municipality may not be held liable on a theory of *respondeat superior*. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing *Monell*, 436 U.S. at 691). Instead, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Camfield v. City of Okla. City*, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal quotation marks and citations omitted).

### 4.      Failure to protect/failure to provide adequate medical care

Plaintiff was a pretrial detainee at the time of the incidents giving rise to his constitutional claims. Even though the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard nonetheless provides the benchmark for such claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted); *see also Henderson v. Glanz*, 2012 WL 5931546 (N.D. Okla. Nov. 27, 2012) (unpublished)[3] ("Because the protections extended to pretrial detainees under the Fourteenth Amendment are at least as broad as those extended to inmates under the Eighth Amendment, the Court need only analyze whether Plaintiff has stated a plausible claim for relief under the Eighth Amendment."). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*

---

[3]This and other unpublished opinions herein are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

*v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  To assert an Eighth Amendment claim, a plaintiff must satisfy a two-prong test – an objective component showing that the deprivation suffered or the conduct challenged was "objectively sufficiently serious," and a subjective component showing that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent" to the inmate's safety.  *Id.* at 834 (internal quotation marks and citations omitted); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985).

The Supreme Court defines "deliberate indifference" as knowing and disregarding an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation marks and citation omitted).  It is not enough to establish that the official should have known of the risk of harm.  *Farmer*, 511 U.S. at 838.  "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted).

Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. *See Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997).  When asserting a claim of failure to provide adequate medical care, the objective element is satisfied "if the condition has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would

8

easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks and citation omitted).

      **5.      Supervisor liability**

      "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted); *see Garrett v. Stratman*, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that an official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation).  As a result, government officials have no vicarious liability in a § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotation marks and citation omitted).  Instead, a supervisor is liable only if he or she is "personally involved in the constitutional violation[] and a sufficient causal connection [] exist[s] between the supervisor and the constitutional violation." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted and citation omitted); *see Schneider*, 717 F.3d at 767 (requiring a plaintiff to show an 'affirmative link' between the supervisor and the constitutional violation).  A plaintiff may establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (citation omitted).

**B.      Defendant Loher's motion to dismiss**

      On October 25, 2015, Defendant Loher filed a motion to dismiss for failure to state a claim (Doc. 37).  In her motion to dismiss, Defendant Loher argues that Plaintiff failed to allege sufficient

facts to show either a constitutional deprivation or substantial harm. *Id.* at 4, 10.  Defendant Loher also argues that the Court should dismiss any claim for punitive damages based on municipal liability. *Id.* at 11.  As discussed below, Defendant Loher's motion to dismiss shall be granted.

In Count I of his original complaint,[4] Plaintiff alleges that his "constitutional rights to not be subjected to cruel and unusual punishment" were violated when "[t]he medical staff and Kathy Loher deliberty [sic] disreguarded [sic] the recommendations of St. John's E.R. Doctor" (Doc. 1 at 2, 3).  Plaintiff avers that "the Defendants" were instructed by the E.R. doctor to send Plaintiff to a "neurosurgeon within 5 days due to the severity of his injury," but that "the Defendants delayed this by 6 weeks." *Id.* at 3.  Plaintiff asserts that this delay "caus[ed] more permenant [sic] injury." *Id.* at 3.  Even though Defendant Loher is not mentioned by name, the term "Defendants" is defined in Plaintiff's complaint to include Defendant Loher, *id.* at 1, and the Court will read Plaintiff's allegations against "Defendants" in general as applying specifically to Defendants Loher. *See Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

## 1.    Official capacity

Plaintiff fails to state a claim against Defendant Loher in her official capacity.  In Count I of his original complaint, Plaintiff does not identify a municipal policy or custom that was the moving force behind the alleged constitutional violation. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *Myers v. Okla. Cty. Board of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.").  Plaintiff also does

---

[4]The Court previously dismissed Counts II and III of Plaintiff's complaint. *See* Doc. 10.

not allege other instances of delay in referring prisoners to outside specialists, such that it would constitute an "informal custom amoun[ting] to widespread practice." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations and internal quotation marks omitted).  As a result, the allegations in Count I are insufficient to state a claim against Defendant Loher in her official capacity.

### 2.    Individual capacity

The allegations contained in Count I of Plaintiff's original complaint are not sufficient to state a claim against Defendant Loher in her individual capacity.   Plaintiff's statement that Defendant Loher deliberately disregarded the E.R. doctor's recommendation is merely conclusory, and the whole of Plaintiff's factual allegations against Defendant Loher are that she was instructed to send Plaintiff to a neurosurgeon within five days but that she delayed sending Plaintiff to a neurosurgeon "by 6 weeks" (Doc. 1 at 3).   While these allegations "do not necessarily preclude [Defendant's] liability for the alleged delay . . . of medical treatment. . . . such liability is nothing more than a theoretical possibility in the absence of other, unnamed acts about which the court can only speculate at this point." *Arocho v. Nafziger*, 367 F. App'x 942, 954 (10th Cir. 2010) (unpublished).  Plaintiff, in his allegations against Defendant Loher, "offers no suggestion, much less a plausible factual specification, as to what [Defendant Loher] failed to do." *Id.*  Without further "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, Plaintiff fails to state a claim for relief against Defendant Loher.   Therefore, as to Count I of the original complaint, Defendant Loher's motion to dismiss is granted.

### C.    Plaintiff's proposed amended complaint fails to state a claim

11

As stated above, Plaintiff requests leave to amend his complaint to sue Sheriff Stanley Glanz in his official and individual capacity; Dr. Gable, the "head physician" at TCJ, in his official capacity only; and Major Shannon Clark, the administrator at TCJ, in his official capacity only. *See* Doc. 31 at 1-3. The Court liberally construes the proposed amended complaint as suing Defendant Loher in her official and individual capacity. For the reasons discussed below, the Court finds that Plaintiff's proposed amended complaint fails to state a claim upon which relief may be granted. Therefore, his motion to amend is denied. In addition, because Plaintiff filed his motion to amend after the Court explained the legal standards applicable to his claims, the Court finds it would be futile to allow further efforts to amend.

### 1. Delay in sending Plaintiff to a neurosurgeon (Count I)

In Count I of his proposed amended complaint, Plaintiff alleges that he was denied his "right to adequate medical care under the 8th or 14th amendment" and that Defendants acted with "[d]eliberate [i]ndifference to his medical needs" (Doc. 31 at 7). Plaintiff's allegations in Count I of his proposed amended complaint are substantively similar to Plaintiff's allegations in Count I of his original complaint, although Plaintiff does name new defendants. Plaintiff asserts that "on Aug. 11, 2014, Dr. Gable and TCJ along with Armor Corrections Health was [sic] informed by St. John's hospital that the Plaintiff was suffering from a serious cervical spine injury." *Id.* at 7. Plaintiff avers that "[t]he E.R. Doctor consulted with a neurosurgeon instructing the Defendants to send the Plaintiff to a neurosurgeon within the next 5 days due to the severity of his injuries," but that "Dr. Gable, the medical staff, TCJ administration, Kathy Loher, Major Shannon Clark, [and] Stanley Glanz deliberty [sic] disreguarded [sic] the recommendation of St. John's E.R. physican [sic] . . . The Defendants deliberty [sic] delayed the Plaintiff from seeing a neurosurgeon" until September

12

24, 2014. *Id.* at 8. Plaintiff alleges that this delay caused him "more [permanent] injury, along with nearly 2 months [of] unnecessary pain and suffering." *Id.* at 8.

### a.     Official capacity (Defendants Glanz, Loher, Clark, and Gable)

Plaintiff's allegations fail to state a claim against Defendants Glanz, Loher, Clark, and Gable in their official capacity. In Count I, Plaintiff does not identify a policy or custom that was the moving force behind the alleged constitutional violation. *Hinton*, 997 F.2d at 782; *Myers*, 151 F.3d at 1316. Plaintiff also does not allege other instances of delay in referring prisoners to outside specialists, such that it would constitute an "informal custom amounting to widespread practice." *Bryson*, 627 F.3d at 788. As a result, the allegations in Count I are insufficient to state a claim against Defendants in their official capacity.

### b.     Individual capacity (Defendants Glanz and Loher)

Plaintiff avers that Defendants Glanz and Loher "delibertly [sic] disreguarded [sic] the recommendation of [the] St. John E.R. Physician" that Plaintiff see a neurosurgeon within five days (Doc. 31 at 8). As explained above,[5] the Court liberally construes Count I to allege that the E.R. doctor instructed Defendants Glanz and Loher to send Plaintiff to a neurosurgeon within five days and that Defendants Glanz and Loher "allowed the Plaintiff to see a neurosurgeon on 9-24-14." *Id.* at 8; *see Stidham*, 265 F.3d at 1156-57.

These allegations are not sufficient to state a claim against Defendants Glanz and Loher in their individual capacity. Plaintiff's statements, that Defendants Glanz and Loher "delibertly [sic] disreguarded [sic]" the doctor's recommendations and "delibertly [sic] delayed the Plaintiff from seeing a neurosurgeon" (Doc. 31 at 8), are merely conclusory. The whole of Plaintiff's factual

---

[5]*See supra* Section B.

allegations against Defendants Glanz and Loher are that they were instructed to send Plaintiff to a neurosurgeon within five days and that Defendants Glanz and Loher "allowed" Plaintiff to see a neurosurgeon six weeks later. *Id.* at 8. As explained above,[6] Plaintiff fails to allege sufficient facts to suggest that Defendants Glanz and Loher are liable for any delay in Plaintiff's medical treatment. *See Arocho*, 367 F. App'x at 954; *Iqbal*, 556 U.S. at 678. In Count I, Plaintiff fails to state a claim for relief against Defendants Glanz and Loher in their individual capacity.

### 2. Denial of prescribed medical treatment (Count II)

In Count II of his proposed amended complaint, Plaintiff alleges that, after he received a cervical fusion, Defendants Gable, Loher, Glanz, and Clark "assumed care of the Plaintiff" and that, instead of being placed in an in-patient rehab facility, he was placed in medical segregation at TCJ "due to the customs and policies of TCJ administration" (Doc. 31 at 9). Plaintiff alleges that he "never received the prescribed rehab therapy prescribed by Dr. Boedeker[7]" and was only "allowed to leave his cell . . . to shower and walk for 10 minutes. This took place only 1-2 times per week. On more than one occasion the Plaintiff was not allowed out of his cell for 8 to 10 days." *Id.* Plaintiff avers that this is the "policy of Stanley Glanz." *Id.* Plaintiff also alleges that Defendant Gable "allowed TCJ admin., and the detention officers to dictate when the Plaintiff was allowed to exercise . . . .[which] hinder[ed] the Plaintiffs [sic] recovery," *id.*, and that Defendant Gable

---

[6] *See supra* Section B.2.

[7] Daniel Boedeker, M.D., a neurosurgeon, performed Plaintiff's cervical fusion surgery in October, 2014, at St. Francis Hospital, Tulsa, Oklahoma. *See* Doc. 31 at 9.

"continued to refuse to supply simple x-rays Dr. Boedeker prescribed to occompany [sic] the Plaintiff on his office visits so Dr. Boedeker could document the Plaintiff's recovery."[8] *Id.* at 10.

### a.   Official capacity (Defendants Glanz, Loher, Clark, and Gable)

In Count II, Plaintiff does not allege that Defendants Gable, Loher, or Clark are policymakers.  Instead, Plaintiff alleges that Defendants Gable, Loher, and Clark were acting in accordance with or enforcing the policies and customs handed down to them by Defendant Glanz. *See  id.* at 9 (alleging that Defendant Gable "allowed" Plaintiff's treatment and that Defendants Clark and Loher "enforced" Defendant Glanz's policies).  These allegations are insufficient to state a claim against Defendants Gable, Loher and Clark in their official capacity.

Plaintiff also fails to state a claim against Defendant Glanz in his official capacity.  Plaintiff avers that it is the custom and policy of Defendant Glanz to "allow[] TCJ admin., and the detention officers to dictate when the Plaintiff was allowed to exercise" and to allow Plaintiff out of his medical segregation cell infrequently and for short periods of time.  *Id.*  Although Plaintiff alleges that he "never received the prescribed rehab therapy [sic] prescribed by Dr. Boedeker," *id.*, Plaintiff does not allege that there was a policy or custom of blanket refusal to consider treatment options recommended by outside physicians.

Further, to invoke municipal liability, a plaintiff must allege facts sufficient to show  that an underlying constitutional violation has occurred.  *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001).  Here, Plaintiff alleges that the decision not to give him the physical rehabilitation

---

[8]Additionally, Plaintiff states that he was "continusly [sic] deprived on several occasions of his much needed prescribed medications again causing unnecessary pain and suffering."  Doc. 31 at 10.  Plaintiff does not allege that any of the Defendants named in his proposed amended complaint or in his motion to amend were involved in depriving Plaintiff of his medication or that the deprivation was the result of any policy or custom.

prescribed by the outside specialist but, instead, to place him in medical segregation in TCJ and allow him out of his cell infrequently and for short periods of time, constitutes a denial of adequate medical care (Doc. 31 at 8-9).

To state a claim of inadequate medical care under Eighth Amendment standards, Plaintiff must first satisfy the objective prong by alleging facts that would tend to show that the deprivation suffered or the conduct challenged was "objectively sufficiently serious." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). Plaintiff alleges that he underwent a "cervical fusion from C-3 thru C-7" and that an outside physician, Dr. Boedeker, "prescribed rehab therphy [sic]" that he never received (Doc. 31 at 9). These facts are sufficient to show that Plaintiff's condition was objectively sufficiently serious.

Plaintiff must also satisfy the subjective prong by showing that an employee at TCJ "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (internal quotation marks and citation omitted). Plaintiff alleges that Defendant Gable "instructed Dr. Boedeker . . . that due to the customs and policies of TCJ administration, TCJ medical would provide the rehab therphy [sic] to the Plaintiff" and that Plaintiff did not receive the rehabilitation therapy that Dr. Boedeker prescribed (Doc. 31 at 9). However, according to the Tenth Circuit, "[a] prison doctor does not violate the Eighth Amendment's prohibition on cruel and unusual punishment" when he uses his medical judgment to "simply resolve[] the question whether additional . . . forms of treatment [are] indicated." *Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 280 (10th Cir. 2012) (unpublished) (citations and internal quotation marks omitted). After his cervical fusion, Plaintiff was placed in medical segregation and monitored (Doc. 31 at 11). Plaintiff does not allege any facts that would tend to show that while he

was being monitored in medical segregation the "need for additional treatment . . . [was] obvious." *Heidtke*, 489 F. App'x at 280.  Elsewhere in his proposed amended complaint, Plaintiff mentions that "between 10-15-14 [and] 12-28-14 the Plaintiff was on a daily basis[] made to stoop, bend, [and] climb into a transport van" and was also made to "bend over, stoop, or climb in his cell 6 to 8 times per day to receive meds, food, or return his food trays or have his vital signs taken" through the opening in his cell door (Doc. 31 at 10).  Plaintiff also mentions that at various times he left his cell to walk around and shower.  *Id.* at 9.  These statements suggest that Plaintiff was able to move about and perform activities of daily living after his surgery and while being held in medical segregation.  Other than the conclusory statement that Defendant Gable "allowed TCJ admin. to hinder the Plaintiff's recovery, from 10-15-14 thru 3-26-15," *id.*, Plaintiff does not allege any facts showing that he experienced any additional injury, pain and suffering, or other negative effects as a result of being placed in medical segregation.  Plaintiff has failed to allege facts suggesting that any defendant acted with deliberate indifference.

Because Plaintiff fails to allege facts sufficient to satisfy the subjective prong of the test for deliberate indifference, Plaintiff's claim does not rise to the level of a constitutional violation.  Without an underlying constitutional violation, Plaintiff cannot invoke municipal liability based on the policies and customs put in place by Defendant Glanz.

Lastly, even if Plaintiff's allegations rise to the level of an Eighth Amendment violation, Plaintiff still fails to state a claim against Defendant Glanz in his official capacity.  To state a claim for municipal liability, the policies attributed to Defendant Glanz must have been "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider*, 717 F.3d at 769 (citations omitted).  Plaintiff must allege sufficient facts showing all three elements

of a municipal liability claim: "(1) official policy or custom, (2) causation, and (3) state of mind." *Id.* The Court liberally construes Plaintiff's proposed amended complaint to assert that Defendant Glanz implemented policies under which staff and administrators at TCJ are allowed to decide the frequency and duration of time spent by inmates in medical segregation outside of their cells, as well as when those inmates are allowed to exercise.[9] *See* Doc. 31 at 9.

According to the Tenth Circuit, a municipality must have "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). A plaintiff can established notice either by (1) "proving the existence of a pattern of tortious conduct" or by (2) showing that "violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (citations and internal quotation marks omitted). Plaintiff does not allege any similar incidents where another prisoner suffered a violation of his or her constitutional rights because of the alleged policies outlined by Plaintiff. Additionally, the essence of Plaintiff's objection to the alleged policies is that the municipality entrusts the physical rehabilitation of prisoners housed in TCJ to the staff of TCJ and that Plaintiff was not satisfied with the level of care he received from the staff of TCJ. There is nothing in these alleged policies that would make a constitutional violation "a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Barney*, 143 F.3d at 1307 (citation and internal quotation marks omitted).

For all of the reasons discussed above, Plaintiff's allegations in Count II are insufficient to state a claim against Defendant Glanz in his official capacity.

---

[9]Consistent with the requirement that the Court take all the well-pleaded allegations of the complaint as true, even if doubtful in fact, the Court assumes, for the purposes of the motion to amend, that these are official policies or customs. *See Twombly*, 550 U.S. at 555.

**b.      Individual capacity (Defendants Glanz and Loher)**

In Count II, Plaintiff avers that Defendants Glanz and Loher "assumed care of the Plaintiff" (Doc. 31 at 9).  Plaintiff also alleges that Defendant Loher "enforced" policies put into place by Defendant Glanz.  *Id.*

Plaintiff cannot state a claim against Defendants Glanz and  Loher based on his statement that they "assumed care of the Plaintiff."  *Id.*  While it is true that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (citation omitted), the plaintiff must still show that any injury he suffered while in custody was objectively sufficiently serious and that the defendants were deliberately indifferent to a substantial risk of harm.  Plaintiff makes no additional factual allegations that would support the proposition that Defendants Glanz and Loher acted with deliberate indifference.

Plaintiff also fails to state a claim against Defendant Glanz based on supervisor liability.  Plaintiff avers that his treatment while in medical segregation and while being transported was in accordance with the policies and customs set out by Defendant Glanz (Doc. 31 at 9).  As the Court found above, Plaintiff did not suffer a constitutional violation as a result of Defendant Glanz's policies and customs.

Additionally, Plaintiff fails to state how either Defendant Glanz or Loher personally participated in any alleged constitutional violation, and in a § 1983 suit, defendants are not vicariously liable for their staff members' behavior.  *Jenkins*, 81 F.3d at 994.  Plaintiff also fails to allege any facts that would support a finding that Defendant Glanz did not take reasonable action

to supervise his staff and that any failure would rise to the level of deliberate indifference. Therefore, the allegations in Count II are insufficient to state a claim against Defendants Glanz and Loher in their individual capacity.

### 3. Failure to accommodate medical needs (Count III)

In Count III of his amended complaint, Plaintiff asserts that, as per the policies and customs of Defendant Glanz, he was "on a daily basis[] made to stoop, bend, [and] climb into a transport van" and that "on November 6, 2014, the Plaintiff was forced to walk bent at the waist at 90 [degrees] and the knees [at] 45 [degrees.] He fell striking his neck on the door jamb, causing the Plaintiff to further injure his post opp [sic] neck, causing unnecessary severe pain and suffering" (Doc. 31 at 10-11).  Plaintiff also asserts that, as per the policies and customs of Defendant Glanz, he "was forced to bend over, stoop, or climb in his cell 6 to 8 times per day to receive meds, food, or return his food trays or have his vital signs taken" while he was in medical segregation. *Id.* at 10. Plaintiff states that he was advised by Dr. Boedeker not to "stoop, bend over, lift, or exert himself in any way until further notice." *Id.*

### a. Official capacity  (Defendants Glanz, Loher, Clark, and Gable)

In Count III, Plaintiff does not allege that Defendants Gable, Loher, or Clark are policymakers.  Instead, Plaintiff alleges that Defendants Gable, Loher, and Clark "permitted" or "enforced" the policies and customs handed down to them by Defendant Glanz. *See id.* 10, 11. These allegations are insufficient to state a claim against Defendants Gable, Loher and Clark in their official capacity.

Plaintiff also fails to state a claim against Defendant Glanz in his official capacity.  Plaintiff avers that it is an official policy or custom, promulgated by Defendant Glanz, to have prisoners in

medical segregation "receive meds [and] food, [] return [] food trays, or have [their] vital signs taken" through an opening in the cell door. *Id.* at 10. Plaintiff also alleges that it is an official policy or custom, promulgated by Defendant Glanz, to have prisoners – even those who are in medical segregation – transported in a van while wearing a belly chain and ankle chains and while "black boxed." *Id.* at 11. As discussed above, to determine whether Plaintiff has stated a claim for municipal liability, the Court must first determine whether Plaintiff has alleged sufficient facts to show that an underlying constitutional violation has occurred. *See Trigalet*, 239 F.3d at 1154.

To state a claim for failure to protect or failure to provide adequate medical care, Plaintiff must allege facts showing that the deprivation suffered or the conduct challenged was "objectively sufficiently serious." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). To meet the standard of "objectively sufficiently serious," the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and internal quotation marks omitted). Pain and suffering of a sufficient magnitude, even absent further injury, may be enough to satisfy this standard. *See Mata v. Saiz*, 427 F.3d 745, 753-54 (10th Cir. 2005) ("Accordingly, the prisoner's claim may be based, for example, on intolerable chest pain rather than the subsequent heart damage [from a heart attack].") Plaintiff alleges that having to bend over several times a day to access the opening in his cell door after having surgery caused him "much unnecessary pain and suffering" (Doc. 31 at 11). Plaintiff also alleges that, after having surgery, he fell while climbing into the transport van and "further injur[ed] his post opp [sic] neck, causing unnecessary severe pain and suffering." *Id.* at 11. These allegations are sufficient to satisfy the objective prong.

Plaintiff must also allege facts that, if true, would satisfy the subjective prong by showing that an employee of TCJ "knew [Plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (internal quotation marks and citation omitted). It is not enough to establish that the official should have known of the risk of harm. *Farmer*, 511 U.S. at 838. Plaintiff alleges that Dr. Boedeker "advised [Plaintiff] not to stoop, bend over, lift, or exert himself in any way until further notice" (Doc. 31 at 10). Plaintiff does not allege that any named defendant or any staff member or administrator at TCJ was informed that Plaintiff was not to "stoop, bend over, lift, or exert himself in any way." *Id.* Plaintiff also does not allege any facts that would have put a staff member or administrator on notice that Plaintiff faced a substantial risk of harm if he bent over or that Plaintiff was at such a risk of falling that climbing into a transport van put him at a substantial risk of harm. In the absence of factual allegations demonstrating that defendants were on notice of a substantial risk of harm, Plaintiff cannot state a claim for deliberate indifference. Because Plaintiff has failed to show an underlying constitutional violation, he cannot invoke municipal liability based on the policies and customs put in place by Defendant Glanz.

Even if Plaintiff's allegations rise to the level of an Eighth Amendment violation, Plaintiff still fails to state a claim against Defendant Glanz in his official capacity. The Court liberally construes Plaintiff's amended complaint to assert that Defendant Glanz implemented policies that mandate (1) staff contact with prisoners in medical segregation be accomplished through the opening in their cell door and (2) all prisoners – including those in medical segregation – be transported via

van while wearing a belly chain and ankle chains and while "black boxed."[10]  *See id.* at 10-11.

Plaintiff fails to allege any facts showing that the municipality had actual notice that its policies were substantially certain to cause a constitutional violation, and Plaintiff, in his proposed amended complaint, does not allege any similar incidents where other prisoners suffered a violation of their constitutional rights because of the alleged policies outlined by Plaintiff.  Additionally, the Court cannot say that a constitutional violation would be "a highly predictable or plainly obvious consequence of" having contact with prisoners in medical segregation through the opening in their cell doors or transporting prisoners in a van while they are restrained.  *Barney*, 143 F.3d at 1307. Instead, Plaintiff appears to be dissatisfied with the staff of TCJ and their failure to provide him with what he felt would be appropriate accommodations.  However, as stated above, municipalities cannot be held strictly liable for the conduct of their employees.  *Schneider*, 717 F.3d at 770.  As a result, the allegations in Count III are insufficient to state a claim against Defendants in their official capacity.

### b.       Individual capacity (Defendants Glanz and Loher)

In Count III, Plaintiff's only reference to Defendant Loher is the conclusory statement that Defendant Loher "enforced" policies and customs put into place by Defendant Glanz.  *See* Doc. 31 at 10.  Plaintiff's allegation that Defendant Loher enforced Defendant Glanz's policies is insufficient to show personal participation by Defendant Loher, without which Plaintiff cannot state an individual capacity claim.  *See Bennett*, 545 F.2d at 1262-63.

---

[10]As stated above, consistent with the requirement that the Court take all the well-pleaded allegations of the complaint as true, even if doubtful in fact, the Court assumes, for the purposes of the motion to amend, that these are official policies or customs.  *See Twombly*, 550 U.S. at 555.

Plaintiff also fails to state a claim against Defendant Glanz based on supervisory liability. Plaintiff avers that his treatment in medical segregation and while being transported was according to the policies and customs set out by Defendant Glanz (Doc. 31 at 10, 11).  Plaintiff makes no further factual allegations related to Defendant Glanz.  As determined above, Plaintiff fails to provide factual allegations sufficient to demonstrate a constitutional violation resulting from Defendant Glanz's policies and customs.  Additionally, Plaintiff fails to state how Defendant Glanz personally participated in any alleged constitutional violation, and, in a § 1983 suit, a defendant is not vicariously liable for his staff members' behavior.  *Jenkins*, 81 F.3d at 994.  Plaintiff also fails to allege any facts that would support a finding that Defendants did not take reasonable action to supervise their staff and that any failure would rise to the level of deliberate indifference.  As a result, the allegations in Count III are insufficient to state a claim against Defendants in their individual capacity.

**D.       Further amendment is futile**

Although the Court has previously given Plaintiff notice of the standards applicable to his claims and he was again alerted to deficiencies in his claims with the filing of Defendant Loher's motion to dismiss, Plaintiff's proposed amended complaint remains deficient.  As a result, the Court finds it would be futile to allow Plaintiff another opportunity to amend his complaint.  *See, e.g.*, *Bellmon*, 934 F.2d at 1109-10 (stating that "a motion to dismiss giv[es] plaintiff notice and opportunity to amend his complaint"); *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.    Defendant Loher's motion to dismiss (Doc. 37) is **granted**.

2.    Plaintiff's motion to amend (Doc. 31) is **denied**.

3.    This is a final Order terminating this action.

ORDERED THIS 16th day of February, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE